Barbour v. Newkirk.   ·

CASE 73—PETITION EQUITY—JANUARY 23.

# Barbour v. Newkirk.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. AN OFFICER'S RETURN UPON A SUMMONS is not conclusive before judgment has been rendered, but the defendant may contradict it and show such a defect in the service as will prevent the court from taking jurisdiction.

In this transitory action the defendant had the right to show that the summons was served in another county than that stated by the officer in his return.

2. THE RETURN OF· A SPECIAL BAILIFF upon a summons which shows *how* and *when* it was executed is sufficient.   ·

3. APPEARANCE TO ACTION.—While a party enters his appearance if he does any act from which it may be presumed that he acknowledges the jurisdiction of the court, motions based upon an alleged want of jurisdiction can not have that effect.

·4. STATUTES— RETROACTIVE EFFECT.— The act of March 6, 1878, declaring Diamond Island, in the Ohio river, to be a part of Jefferson county, can only be regarded as declaratory of the county location of the island from the enactment of the statute, and can .not, therefore, affect a service of summons made ·prior to the ·passage of the act.

In this case a service of summons at a particular place on Diamond Island prior to the act of March 6, 1878, is held to have been made in Oldham county.

.JOHN B. BASKIN FOR APPELLANT.

1. The return of an officer upon process is conclusive, and can not be traversed in the case in which it is made.   (Taylor v. Lewis, 2 J. J. Marsh., 400; Shaffet v. Menifee, 4 Dana, 150;· Smith v. Hornback, 3 Marsh., 392; Armstrong v. Easton, 1 B. Mon., 66; Gwynne on Sheriffs, page 473.)

·2. The officer's return of a process need not show that the court has jurisdiction.   It is sufficient if it show time and manner of service.

·3. By making motion to quash the officer's return, and by filing affidavits in support of the motion, a defendant enters his appearance to the action.   ·

The same result follows from a motion to quash a warning order or from filing an affidavit controverting· an attachment.   (Duncan v. Wickliffe, 4 Met., 120; Civil Code, section 690.)

vol. 83.—34

N. T. CRUTCHFIELD ON SAME SIDE.

A legislative enactment declaratory of the present and past course of a county boundary is valid, although retroactive in its operation. (Satterlee v. Mathewson, 2 Peters, 412–13; Mahony v. McGee, 4 Bush, 529; Ford v. Hall, 1 Mon., 24; Grundy v. Commonwealth, 12 Bush, 350; Head, &c., v. Ward, &c., 1 J. J. Marsh., 284; Goslem v. Stonington, 4 Conn., 209; Mathew v. Chapman, 6 Conn., 58; 7 Conn., 319; *Ibid*, 351; 6 Conn., 198.)

C. B. SEYMOUR FOR APPELLEE.

1. A defendant does not waive any objection to the jurisdiction, or enter his appearance to the action by making any motion founded upon a want of jurisdiction.

2. An appearance for the special purpose of objecting to the jurisdiction does not cure defects in the process. (Civil Code, sections. 79, 80.)

3. The return must show place of service.

4. An attachment issued in an action in which process has been improperly executed, or in which a warning order has been procured by a false affidavit, should be discharged. A judgment sustaining such an attachment would be in violation of article 12 of the Federal Constitution.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This is a transitory action for debt, brought in the Louisville Chancery Court, on April 19, 1877, and dismissed by it for want of jurisdiction in December, 1883. It was originally brought against the appellee alone. Subsequently, another party, who was served with a summons in Jefferson county, was made a defendant, but the appellant dismissed the action as to him, and the question presented is, whether the court properly held that the appellee was not before the court. At the institution of the action a summons was sued out to both Jefferson and Oldham county, but they were never returned. The attachment, which was then also issued, was levied upon a tract of land belonging to the appellee in Jefferson county, but was not served upon.

him.   Subsequently, another summons was issued to
the last named county, but it was never returned.
On December 8, 1877, another was sued out, and a
special bailiff, properly deputized by the marshal of
the court, made, and verified by his oath, this return
upon it:

"Executed January 5, 1878, upon Joseph New-
kirk, by delivering to him a copy of the within.
summons.            J. W. BENNETT, S. B."

Subsequently, the appellee appeared and moved to
quash the service and return of the officer upon the
ground that it was served upon him in Oldham
county, and filed several affidavits in support of
the motion; but it was not then decided.

In January, 1879, another summons against the
appellee was returned by the sheriff of Jefferson
county, with the information that he had found him
in the county, but could not get near enough to him
to read the summons to him or give him a copy.

After this a warning order was entered against the
appellee as a non-resident.   He appeared, reserving
his objection, however, to the jurisdiction, moved to
set the order aside for want of jurisdiction, and filed
affidavits showing that the grounds upon which it
had been made were not true.   His motion was sus-
tained.   On November 23, 1883, he again objected
to the jurisdiction of the court, and for the alleged
want of it moved to dismiss the action and discharge
the attachment.

In each instance where he appeared in court he
objected to the jurisdiction, and the motions by him
to quash the return upon the summons and to set.

aside the warning order did not confer it. They were all based upon an alleged want of jurisdiction. A party enters his appearance if he does any act from which it may be presumed that he acknowledges the jurisdiction of the court. These motions, however, denied it. The return by the special bailiff was sufficient. It appears from it *how* and *when* it was executed, and this is all that section 49 of the Civil Code requires. It is urged, however, that it was conclusive, and that nothing *dehors* the officer's statement can be received to show that it is not true.

As the marshal of the court had the power to execute process co-extensive with the State, it may be said that the affidavits showing that it was in fact executed upon the appellee in Oldham county, were not, in fact, contradictory of it. But, aside from this, there is no doubt but that the appellee had the right to question the return as a mistake, and show that he was not, in fact, served in Jefferson county. Suppose that a summons be returned as executed upon A, the defendant to a suit, when in fact it was served upon B; can not the former show this fact? It is true there are cases holding that an officer's return can not be questioned collaterally; that it can not after judgment, and in the absence of fraud by the party benefited by it, be impeached by a chancery proceeding, to which the officer was not a party. In these cases, however, rights had accrued or vested. The stability of a judgment or the muniments of title depended upon the verity of the record. To question collaterally the action of the officer under such circumstances

would impair public confidence in judicial records.. There was no judgment, however, in this case; and to deprive a defendant of the right to question the return before any right had accrued, would create a rule devoid of reason, and creative of litigation.

When the special bailiff served the summons upon the appellee, the latter was residing upon Diamond Island, in the Ohio river, and it was executed upon him there.   It is within the Kentucky line, but it appears to have been at times a disputed question whether it belonged to Jefferson or Oldham county, or in part to each.   This arose from the fact, that although the Kentucky line is low-water mark upon the Indiana side of the river, yet the act establish ing Oldham county defined its boundary as beginning "at the mouth of Pond creek (which is upon the Kentucky side) opposite Diamond Island;" and after running a series of courses and distances to the Gallatin county line; "thence along the Gallatin county line to the State line on the Ohio river; thence down same to the point of beginning."   The beginning point, however, being fixed, the line to close the survey must be run at a right-angle, or in other words, and reversing it, from the mouth of Pond creek across the river at a right-angle to low-water mark upon the opposite shore.

The affidavits filed by the appellee stated unequivocally that the house where the service was made was in Oldham county; and that if a line at a right-angle with the river were drawn across it from the point where the dividing line of the two counties struck the river, the house would be left

in Oldham county; and that even if the line between the two counties were continued in the same course across the river, it would leave the house still farther in Oldham county. It appears that the land where the house was situated, and which belonged to the appellant Barbour, was assessed by him in 1877 in Oldham county; that he had sworn in a legal proceeding that it was in that county, and that the parties to this action so regarded it. The act of the Legislature of March 6, 1878, declaring the island to be a portion of Jefferson county, and that it had been such since the creation of the last-named county, was passed subsequent to the service of the summons, and can only be regarded as declaratory of the county location of the island from the enactment of the statute.

Whether the summons was served in the one county or the other, was a question of fact upon which the lower court has passed; and although the appellant may lose an honest debt, yet we do not feel authorized to disturb its conclusion.

Judgment affirmed.