## Mrs. John Nugent and Riley Stansberry v. Mallory, et al.

(Decided December 15, 1911.)

### Appeal from Henderson Circuit Court.

1. Quieting Title.—In order to maintain a suit in equity to quiet title to land, the petition must show that the plaintiff is the owner, and in the actual possession of the land in controversy.

2. Ejectment.—Where the original petition stated that plaintiff was

the owner of the land in controversy, but that the defendant had taken possession thereof, and by an amended petition the plaintiff prayed for the possession of the land, and for damages for the detention thereof, the petition, as amended, stated a case in ejectment; and a judgment rendered therein by the chancellor, without objection, is not erroneous, but is binding upon the parties.

3. Res Judicata.—To sustain a plea of res judicata, the final judgment of the former suit is the best evidence of what was decided in that action; the pleadings and the opinion of the court are not sufficient proof of the fact decided.

4. Riparian Rights to the Shore.—A littoral proprietor, like a riparian proprietor, has the right to the water frontage belonging, by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purpose of using the right of navigation. This right is his only, and exists by virtue, and in respect of riparian proprietorship.

5. Accretions.—The right of accretion to an island in the river can not be extended lengthwise of the river so as to exclude riparian proprietors above or below such island, from access to the river as such riparian proprietors. Accretions are apportionable among riparian proprietors according to the lateral lines of the firm land possessed by them.

6. Accretions.—Accretion is a doctrine to facilitate and authorize the right of front access to the sea by a riparian owner, who would otherwise be cut off from his shore; it is not the right of one riparian owner to extend his land sideways beyond his boundaries.

7. Accretions.—Where a stream, which divides two estates, has been filled by accretions, and has ceased to exist as a stream, the boundary line between said two estates will extend to the middle of the stream as it ran, or to the middle of the accretion after the dividing stream has been filled by the accretion.

YEAMAN & YEAMAN for appellants.

MONTGOMERY MERRITT for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming as to Mrs. Nugent and reversing as to Stansberry.

This is a contest over certain accretions which have grown up between Green River Island and Tow Head Island in the Ohio River. Green River Island is a large body of land, containing over 2,000 acres, and lies between Evansville, Indiana, and Henderson, Kentucky; and, although it is still known as an "Island," and as a part of Henderson County, Kentucky, it has, by accretion, become physically united to the Indiana shore, with the Ohio River lying south of it. This physical situation

has come about from a change in the bed of the river, an account of which may be found in the opinion in Indiana v. Kentucky, 136 U. S., 497. Tow Head Island lies, perhaps, midway between the head and foot of Green River Island, and south of that island. Formerly, and especially in high water, there was a channel between the two islands, through which steamboats sometimes passed. This channel has become filled to a large extent, so that now the two islands are united, and form, in reality, a single body of land. The 84 acre tract of accretions involved in this litigation lies above Tow Head Island, and alongside of Green River Island, to which it is united. The relative location of the two islands, and the land of the contending parties, are shown upon the accompanying map.

The accretion in controversy is enclosed by the lines A, E, D, C, B, M, A. The appellees own Tow Head Island and derive their title through three patents; the first having been granted in 1826 to Robert Terry, for 22½ acres upon the lower end of Tow Head Island; the second in 1842, to McClain, for 50 acres immediately above the Terry patent; and the third in 1878, to Mallory and McClain, for 30 acres, which carried their boundary to the lines D, C, B. The defendants in this action are Zeiner, Mrs. Nugent, Stansberry, Mrs. Ising and John Nugent, who own the several parcels of land on Green River Island as shown on the plat.

On December 7, 1908, the appellees filed their petition herein in the Henderson Circuit Court against Riley Stansberry, Adam Zeiner, Mrs. William Ising, John Nugent and Mrs. John Nugent, wherein appellees claimed that they were the joint owners of the 84 7-100 acres of land shown on the plat, and in possession thereof, except a certain undescribed portion thereof, which they alleged had been taken possession of within the last fifteen years by the appellants. The petition prayed that appellees' title thereto be quieted.

The petition as originally drawn did not present a state of fact that would have authorized the court to quiet appellees' title thereto, since it did not show that the plaintiffs were in the actual possession of the land in controversy. Kentucky Statutes, Sec. 11; Brown v. Ward, 32 Ky. Law Rep., 261.

The distinctive characteristics and essentials of a suit to quiet title to land, were pointed out by this court

OHIO

RIVER

Green River
2000 Acres

Indiana
Kentucky

Is. L.

Zerner

Mrs Nugent

Stansberry

Mr Isang

John Nugent

McCargal

Tow Head Isl.
11.8? acres

R R

C

D

C

E

B

A

Pond

Explanation
1 Inch = 160 Rods

{ — — — — — Line CM fixed by Court
from M going North, passway 30 feet wide
AREA AMBCDEA = 84.07 Acres

Navigation 3½?

in Kincaid v. McGowan, 88 Ky., 101, where, quoting from Pomeroy's Remedies & Remedial Rights, Sec. 369, it said:

"The adverse claimant or claimants must be out of possession, and must assert a hostile title or interest. In this condition, the possessor of the land, without waiting for any proceeding, legal or equitable, to be instituted against him may take the initiative, and, by commencing an equitable action, may compel his adversaries to come into court, assert their titles, and have the controversy put to rest in a single judgment. It is plain, therefore, that this statutory suit is the converse of the legal action of ejectment."

Subsequently, however, on October 21, 1910, appellees filed their amended petition, in which they prayed for the possession of said 84 7-100 acres of land, and for $7,500.00 damages for the detention thereof. The petition, as thus amended, presented a case in ejectment; and, although it was properly a common law action, a judgment rendered therein by the chancellor, without objection, is not erroneous for that reason, but is binding upon the parties. Civil Code, Secs. 9, 10 and 11. The action tried was, therefore, one in ejectment rather than an equity suit to quiet title; and the issue tried was, whether the appellees or the appellants were the owners of the 84 acres of accretion, which lay between the two islands. The answer denied the ownership or possession of the appellees; and in a second paragraph, the defendants stated that they were the owners of, and that they, and those under whom they claimed title, had, for more than fifty years, been in the actual adverse possession of their several tracts of land on Green River Island, which extended to, and are severally bounded on the south side, by the Ohio river; that in recent years the 84 acres in dispute, which the answer describes by metes and bounds, had been formed, and become an accretion to their land. They further alleged that no part of said 84 acres belonged to the appellees, or had ever been in their possession; that it was not an accretion to Tow Head Island, but was an accretion to Green River Island, and to the appellants' land thereon; that said accretion extended from the land of the appellants to the water's edge of the Ohio river; that they had, by notorious acts of ownership, claimed, and had the actual possession and use of said accretion as rapidly as it formed, for

more than, fifteen years before the institution of this suit; that they had, for many years, plowed and cultivated said accretion, and raised crops thereon; and during all that time neither the appellees, nor any of them, had ever asserted any claim thereto, prior to the filing of this suit.

The circuit court dismissed the petition of the appellees as to John Nugent and Mrs. Ising; but as to Riley Stansberry, Mrs. John Nugent and Adam Zeiner, the judgment divided the accretion by awarding. to appellees that portion thereof which lies south of the line C, M, and to the appellants their several portions north of said line. Zeiner did not appeal; but from the judgment as above indicated, Mrs. John Nugent and Riley Stansberry have prosecuted this appeal.

The evidence shows, beyond controversy; that appellees' eastern boundary line to the Tow Head Island is along the line marked D, C, B, and that the 84 acres of accretion, which fill up the intervening space between Tow Head Island and Green River Island, have gradually been formed during the past thirty years or more; and as the accretion was thus formed, the appellants and the other owners of the adjoining land upon Green River Island, have appropriated it by actual use and cultivation. At one time the boundary line D. C, B, was a navigable stream, and it is not now usually dry, but is a ravine filled with water at certain stages of the river. Appellees' title to the 84 acres rests solely upon their claim that it constitutes an accretion to Tow Head Island. The accretion, it will be observed, extends upstream from Tow-Head Island, parallel with the river, and in front of appellants' land on Green River Island. The line established by the judgment of the circuit court gives that part of the accretion which lies next to the river, to the appellees, who own the land at the upper end of Tow Head Island, and the northern or inner part of the accretion was awarded to the appellants and the other owners of the adjoining land upon Green River Island. The judgment not only shuts appellants off from their former access to the river, but deprives them of all future accretions to their land.

Appellants base their claim to the accretion in front of their property, and lying directly between their lands and the bank of the river, upon the authority of Miller v. Hepburn, 8 Bush, 326, where this court held

that riparian proprietors of lots originally fronting on a river are entitled to the land added thereto by accretion, to be ascertained by extending the original river frontage of the respective lots, as nearly as practicable, at right angles with the course of the river to the thread of the stream, and disregarding the oblique direction of a boundary line with reference to the general course of the river. In that case it was unsuccessfully contended that the true rule was to give to each riparian proprietor such a proportion of the alluvial soil as the total extent of his front line bears to the total quantity of the alluvial soil to be divided, without regard to the general course of the river, or the center of the stream. But, after a full consideration of the question, the court declined to follow the rule last suggested, but adopted the rule first above indicated. And, in doing so, it said:

"The rules thus laid down may be eminently proper in the division of the accretion upon the shores of navigable streams, where the tide ebbs and flows, because the proprietor adjoining the edge of such river only owns to the water's edge, and low water is the end of the line; and hence, as the shore changes, the respective lines on such shore must change; but, in a river not navigable—that is, where the tide does not ebb and flow—the proprietor does not stop at low water, but by permission and sufferance of the State, he goes to the middle of the stream, and must have his shore front to the middle; and, it is a matter of little consequence whether islands are formed, or whether there is an accretion on the shore, or whether the water remains as it was when he received his ground; he is entitled to his front to the center of the stream."

See also Berry v. Snider, 3 Bush, 277; Barbour v. Newkirk, 83 Ky., 529; and Arnold v. Munday, 1 Halstead, 1, 10 Am. Dec., 365.

A preliminary question is presented by appellees' plea in bar to Stansberry's claim to the accretion. In 1889, Mallory and McClain instituted an action in the Henderson Circuit Court against John and James Nugent, to recover the price or value of certain gravel, which it was alleged the defendants in that action had taken from the lands of the plaintiffs, Mallory and McClain. Nugent paid into court the money claimed by Mallory and McClain, and showed in his answer that

W. H. and Sarah Stansberry, from whom Riley Stansberry acquired title, were claiming the money. The Stansberrys filed their petition in that case, and, as owner of the land fronting the sand bar from which the gravel had been taken, claimed the money; and the case was tried out upon that issue. The circuit court dismissed Stanberry's petition; awarded the money to Mallory and McClain, and from that judgment Stansberry prosecuted an appeal to this court, which was affirmed in Stansberry v. Mallory, 101 Ky., 49.

To this plea in bar appellants rejoined, by denying that the gravel in controversy in that case was taken from any part of the accretion now in controversy; and they further alleged that the gravel involved in the former suit was taken from the bed of the Ohio river, from under water, and from bars that were not, and never were any part of Tow Head Island; that those bars were only exposed in very low water, and the gravel was taken, and could only be taken when they were under water, and by no means of boats and steam dredges. It is, therefore, insisted by Stansberry that the judgment in that case dismissing his petition, is not a bar to this action concerning the ownership of the land.

In support of the plea in bar, the appellees read the petition, the answer, the reply, the rejoinder, and the opinion of this court in the original suit of Mallory and McClain against Nugent, as reported in 101 Ky., 49. As they did not file the judgment of the lower court, or of this court, it is sufficient to say that the plea of res judicata was not proven, since the proper way to prove the contents of a judgment is by the judgment itself.

Furthermore, the pleadings make an issue as to the identity of the land from which the gravel was taken, and it does not satisfactorily appear at what particular point the gravel was taken. It was taken somewhere near the head of Tow Head Island, and from ground that was then under water. Neither the judgment of the former case, nor the parol testimony of this case, establishes that point. Under any view of the case, therefore, the plea of res adjudicata can not prevail.

Turning to the merits of the case, we find the testimony is wholly irreconcilable, as to whether this 84 acres in controversy is, as a matter of fact, a part of

an accretion to, and an outgrowth from Green River Island, or whether it is a similar part of Tow Head Island. Some of the witnesses say that it is an accretion to Green River Island, because islands never grow up-stream, and that sediment does not form on the upper side of an obstacle; while others are equally positive that it is an accretion to Tow Head Island, for directly contrary reasons. Under this conflict in the testimony, we will not attempt to decide 'the question of fact, as to whether the 84 acres are actually and physically an accretion to Tow Head Island, or an accretion to Green River Island; neither do we consider it necessary to go into that question, since we are of opinion that the case is to be controlled by legal principles which defeat appellees' title to the accretion in controversy.

According to appellees' contention, they can claim accretions to Tow Head Island, whether they were formed on the outside of that island and adjoining the Ohio river, or whether they proceeded up the river from the head of Tow Head Island, and in front of the lands of appellants, which lie upon Green River Island. But this contention is not a sound one under the authorities. In Mulry v. Norton, 100 N. Y., 426, 53 Am. Rep., 206, the New York Court of Appeals said:

"We are also of the opinion that the principles applicable to the apportionment of lands formed by accretion among the owners of contiguous uplands is quite controlling as to the rights of the respective parties in this case. Such owners are entitled to lands made by accretion or reliction in front of their property and contiguous thereto in certain proportions, according to the formation of their respective shore lines. However, such accretions may be commenced or continued, the right of one owner of up-lands to follow and appropriate them ceases when the formation passes laterally the line of his coterminous neighbor. A littoral proprietor, like a riparian proprietor, has a right to the water frontage belonging by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purpose of using the right of navigation. This right is his only, and exists by virtue and in respect of riparian proprietorship. Gould on Waters, Sec. 149, Beuccleuch v. Metropolitan Board of Works, L. R., 5 H. L., 418."

In St. Louis v. Rutz, 138 U. S., 250, the court said:

"The right of accretion to an island in the river can not be so extended lengthwise of the river as to exclude riparian proprietors above or below such island, from access to the river as such riparian proprietor."

And in Stockley v. Cessna, 119 Fed., 832, the court said:

"Accretions are apportionable among riparian proprietors according to the lateral lines of the firm land possessed by them."

See also 3 Washburn, R. E., 58; Gould on Waters, Sec. 162, 1165.

In Hempstead v. Lawrence, 120 N. Y., Sup., 954, the court said:

"Accretion is, therefore, a doctrine to facilitate and authorize the right of front access to the sea by a riparian owner, who would otherwise be cut off from his shore; it is not a right of one riparian owner to extend his land sideways beyond his boundaries."

See also Widdicombe v. Rosemiller, 118 Fed., 295; Berry v. Hoogendoon, 133 Ia., 437. Under these authorities appellees could, in no event extend their ownership up the river, and for that reason alone they must fail as against Stansberry.

Furthermore, the evidence does not sustain the appellees' contention that the 84 acres is in fact an accretion to Tow Head Island. The line D, C, B, which was formerly of sufficient size to be navigable by steamboats is yet a distinct water line, separating Tow Head Island from the land above it; and, to apply the doctrine of accretion so as to give this 84 acres to. the owners of Tow Head Island, would be extending the doctrine far beyond its usual or ordinary application. There must be a natural and actual continuity of the accretion to the land of the riparian owner; if there is a separation of the claimant's lands from the alluvium, his right thereto cannot be maintained. In other words, in the language of some of the opinions, the doctrine of accretion will not admit of jumping a slough. Crandall v. Smith, 134 Mo., 640; Bellfontaine v. Neidringhaus, 72 Am. St. Rep., 269.

This being a suit in ejectment, appellees can recover the accretion in controversy only upon the strength of their own title thereto; and, as above pointed out, they could not have acquired any title to

the accretion formed on the river between line B, M, A, and appellees' lands. But, as between the owners of Tow Head Island and Mrs. Nugent, the usual rule applicable to the division of accretion formed by filling up the dividing stream between two estates, applies, and extends each boundary to the middle of the stream as it originally ran, or to the middle of the accretion after the dividing stream has been filled by the accretion. Wilson v. Watson, 144 Ky., 352.

Under the rule laid down in Miller v. Hepburn, if it were applicable, Mrs. Nugent could obtain no water front on the Ohio river by extending her lines at right angles thereto, because, in doing so, her eastern line would strike the boundary line of Tow Head Island before it reached the bank of the river. But that rule does not apply to her case; on the contrary the usual rule of dividing accretions between the estates lying upon the opposite sides of the stream, applies between the appellee and Mrs. Nugent, and extends the boundary of each to the center of the dividing stream, or to the center of the accretion which has now taken its place.

The division line as made by the circuit judge properly applied that rule as against Mrs. Nugent, and gave her all that she was entitled to. The judgment against Mrs. Nugent is affirmed; the judgment against Stansberry is reversed, with instructions to dismiss the petition as to him.