## McGill v. Thrasher, et al.

### Same v. Henderson.

(Decided November 15, 1927.)

## Appeals from Hancock Circuit Court.

1. Navigable Waters.—Owner of land bordering a stream, navigable or nonnavigable, and having shore line for a boundary, owns bed of river in front of his lands to center of stream, and is entitled to additions thereto whether by accretion or formation of islands.

2. Navigable Waters.—If owner of land bordering a stream, navigable or nonnavigable, holds under a grant, his rights in bed of stream render nugatory junior patent to island arising or existing between shore line and center of stream.

3. Navigable Waters.—When established island is separately granted by commonwealth, unless prior grant is shown by owner of mainland, patentee of island has same riparian rights that attach to owners of mainland, which right carries title to thread of stream between island and mainland.

4. Navigable Waters.—Title of riparian owner of land bordering stream, navigable or nonnavigable, to thread of stream extends only to such land as is included within his lateral lines or extended at right angles with course of stream, and does not embrace extensions up or down river.

5. Navigable Waters.—Owner of island under patent was without title to additions to island beyond his patent calls, which were not included within his lateral lines extended at right angles with course of stream, in absence of adverse possession.

6. Navigable Waters.—In suit by owner of island to quiet title as against owners of mainland, plaintiff could not claim title to additions to island up river beyond his patent calls, where his possession of land for 10 or 12 years during cropping season before beginning of suit, while adverse as to owner of mainland, had not ripened into title.

7. Adverse Possession.—Where patentee of island in Ohio river was in actual adverse possession thereof, cultivating it annually, and claiming to well-defined boundaries, occupancy of mainland did not give owner thereof adverse possession of interference by patentee of island.

8.   Ejectment.—In ejectment, the plaintiff must recover on the strength of his own title.

ALBERT B. OBERST for appellant.

FLOYD J. LASWELL and W. FOSTER HAYES for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS— Affirming in part and reversing in part.

S. T. McGill owns an island in the Ohio river, which he claims extends eastwardly up the river to the mouth of Yellow creek. Mr. and Mrs. W. F. Thrasher own the Kentucky mainland on each side of the mouth of Yellow creek; the latter's shore line extending west down the river from the mouth of the creek 32 poles to the lines of Mrs. Sazy Henderson, whose shore line extends 32 poles down the river. In the first of the above-styled suits McGill sued the Thrashers to quiet his title to that part of the island as claimed by him which lay opposite their land. In the second Mrs. Sazy Henderson, by an action in ejectment, sued to recover from McGill that part of the so-called island opposite her land and damages for its detention. Both suits were heard and tried in equity on the same evidence, though not consolidated. The lower court found in favor of the Thrashers and Mrs. Henderson. McGill appeals; the cases being considered together in this court on the same record.

Appellees' ownership of the mainland claimed by them is not questioned, but neither of them traces title to the commonwealth. Each of them shows possessory title under recorded deeds; that of Thrasher dated the —— day of ——, 1882, and that of Mrs. Henderson dated the —— day of ——, 1906. McGill traces title to a patent issued to Frank Blanford on the 20th day of December, 1892, and also claims by adverse possession; the patent boundary being thus described:

> "An island in the Ohio river beginning at a certain willow tree or bush on the upper of said island at a point N. 17 degrees 30′ West 40 poles from a stake in a line or corner of Frank Monarch and John House on the south bank of the Ohio river and 103½ poles below the mouth of Yellow or Fortification creek, 2 maple pointers, one 16 inches in diameter N. 63 degrees West 21 feet from stake, the other fourteen inches in diameter N. 16 degrees 30′ West 50 feet from stake; thence around said island

with the meanders of the river at low water mark to the beginning.''

As indicated, the mouth of Yellow creek was 103 poles east or up stream from a willow which at the time the patent was granted was presumably at the upper end of the plant growth of the island, though at low-water mark a sandbar extended from this point eastward for a mile or more. However, this sandbar also reached the mainland, forming a beach 200 to 300 yards in width, so that at low-water mark the entire island and beach constituted a peninsula. At that time it appears that Yellow creek at low-water mark cut a channel through this sandbar straight out to the river beyond, but even then the shore had been filling for many years, and W. F. Thrasher, one of the appellees, had planted on this beach trees, which grew rapidly, the mouth of the stream filled, and its waters scattered on the sandbar and turned west between the island and the Kentucky mainland. As time went on, surprising deposits of alluvium were added to the beach and accretions to either side of the island, so that for several years past the beach has become valuable land, covered with a good growth of timber. The patentees took possession of the island, and reduced the western end to cultivation, and they and their successors in title gradually extended the cleared lands eastward, and as long as 10 years ago cleared and reduced to cultivation several acres in front of the mainland owned by Mrs. Henderson. 1912 the present owner had a survey made around the land claimed by him, running his lines to the mouth of Yellow creek, including all the lateral accretions, but has not committed any other act of ownership upon that part opposite the Thrasher lands. Mrs. Henderson has been in quiet possession of the mainland all of this time, but has taken no hostile steps with reference to the disputed land, though during the last eleven years the Thrashers have cut timber from the portion in dispute between them and McGill, and have cleared some of it.

It is well settled in this state that the owner of land bordering a stream navigable or nonnavigable and having the shore line as his boundary, owns the bed of the river in front of his lands to the center of the stream, and is entitled to any additions thereto, whether by way of accretions or of the formation of islands. Nugent v.

Mallory, 145 Ky. 824, 141 S. W. 850; Hilleary v. Wilson, 100 S. W. 1190, 30 Ky. Law Rep. 1262; Berry v. Snyder, 3 Bush 266, 96 Am. Dec. 219; Wilson v. Watson, 144 Ky. 355, 138 S. W. 283, Ann. Cas. 1913A, 77; Miller v. Hepburn, 8 Bush 329. Further, if holding under a grant. his rights in the bed of the stream are analogous to those of similar title holders in ordinary real estate, and render nugatory a junior patent to an island arising or existing between the shore line and the center of the stream. Hilleary v. Wilson, supra. Though in the later case of Wilson v. Watson, supra, the court declined to lay down a rule in reference thereto. But, when an established island is separately granted by the commonwealth, unless a prior grant is shown by the owners of the mainland, the patentee of the island has the same riparian rights that attach to ownership of the mainland. This, of course, carries title to the thread of the stream between the island and the mainland; the rule being thus stated in Hilleary v. Wilson, supra:

"Where a permanent island of long existence, having a separate and well-defined body of land, has been patented and conveyed apart from the mainland, and it does not appear that the mainland has theretofore been granted, the island constitutes opposite sides to the two shore owners, making two channels, and giving to the mainland owner title to the bed to the middle of the stream between the island and the shore, and no more. . . .

"Furthermore, island No. 3 was granted by the commonwealth in 1837 as an independent survey, and entirely separate from the mainland. No owner of the mainland is claiming, or has ever claimed any part of island No. 3 by virtue of riparian rights which attached to the mainland. It may be that island No. 3 was granted by the commonwealth prior to the grant of the mainland; or it may be that the mainland was restricted in its boundary to the edge of the water, or by other terms, which would deprive its owner of his common law riparian rights. This case, therefore, is to be tried as though island No. 3 was mainland. If it is to be so treated, and is not restricted in its description, there is no reason, in principle, why it should not have the usual common-law riparian rights that attach generally to the mainland."

It will be observed that in this case the appellees do not trace title to the commonwealth. If a prior grant existed to the mainland, it may be that the patent boundaries were restricted to a line at the water's edge, or that it provided other terms that would deprive the owners of common-law riparian rights; hence as to the lateral accretions on the sides of the island it would seem that appellant is entitled to recover. However, the title of the riparian owner to the thread of the stream extends only to such land as is included within his lateral lines, extended at right angles with the course of the stream, and does not embrace extensions up or down the river (Nugent v. Mallory, supra); hence appellant is without title to additions made to his island extending up the river beyond his patent calls, unless he has acquired title thereto by adverse possession. Considering this, the evidence is conflicting as to the length of the island at the time it was patented. At extremely low-water mark, in a strict sense, there was no island, but a peninsula, and under the patent calls no boundaries could have been given to such peninsula. In describing it as an island, it was evidently intended to embrace such parts as were ordinarily surrounded by water, and it is difficult now to establish the extreme upper end as it then existed, but it is clear that it did not extend up to the mouth of Yellow creek nor in front of the Thrasher lands, for what was then a beach to their mainland extended down to the island, and, when this was submerged, the head of the island was some distance west of their lands; hence appellant's paper title is insufficient to authorize a recovery against them; nor has he shown title by adverse possession as against them. It is true that there is a house built on the island that is occupied during cropping seasons; that the lower or western end has been cultivated for more than 30 years, and that his cultivated land has been extended up in front of Mrs. Henderson for 10 or 12 years, and that such acts of possession are perhaps sufficient to show an adverse holding to the extent of his boundary during the latter period. Britt v. Houser, 171 Ky. 494, 188 S. W. 628; Webbs v. Hynes, 9 B. Mon. 388, 50 Am. Dec. 515. But, as we have seen, the survey extending and marking his boundary in 1912 was less than 15 years before this suit was filed, so that, aside from the acts of ownership exercised by Thrasher, if it

should be said that McGill's conduct during that period constituted evidence of adverse holding of the disputed land, yet, as such holding had not ripened into title, his suit to quiet title against the Thrashers failed.

As to Mrs. Henderson, a different principle applies. She is claiming both the mainland and the additions to the island in front of her land by actual adverse possession of the mainland since 1906. We have seen that since 1916 appellant has been in the actual adverse possession of this interference, cultivating it annually, and claiming it to well-defined boundaries. Under such circumstances, her occupancy of the mainland did not give her adverse possession of the interference, and it cannot be said that she acquired title thereto. In ejectment, the plaintiff must recover on the strength of his own title, and this she failed to do; hence her petition should have been dismissed.

Wherefore the appeal of McGill v. Thrasher is affirmed, and that of McGill v. Henderson is reversed.