## SPEED v. TURNER et al.

Court of Appeals of Kentucky.

March 20, 1953.

Cleon K. Calvert, Pineville, for appellant.

Smith & Shehan, Harlan, for appellees.

CULLEN, Commissioner.

This appeal involves the title to a tract of 45 acres near the top of Pine Mountain in Harlan County. The plaintiff in the lower court, William S. Speed as trustee for himself and another, appeals from a judgment quieting the title in the defendants, John L. Turner and George Holbrook.

Speed claims under the C. O. Lockard patent of November 4, 1873, which covered some 40,000 acres. Turner and Holbrook claim under the Calvin Nolin patent of April 3, 1876, which embraced 100 acres. Speed contends: (1) The Lockard grant is superior to the Nolin grant; and (2) the Nolin grant was not located by the evidence

as covering the tract in controversy. Adverse possession is not argued.

Concerning the priority of the grants, the parties agree that the date of the survey rather than the date of the patent will control. We believe they also would agree that if the dates of entry were known, the first entry would control. KRS 56.190. The dates of entry are not in evidence here, but we do have the dates of survey. The difficulty is that the Lockard patent is based on a survey which began June 24, 1873, and continued through July 5, 1873, while the Nolin patent is based on a survey dated June 24, 1873, the same day that the Lockard survey began. The appellant argues that, at the very least, the Lockard survey must be treated as being of the same date as the Nolin survey, and he further maintains that the Lockard survey must have been made first because, in a list of prior entries specifically excluded from the Lockard grant, no mention was made of the Calvin Nolin entry.

■ We think that at least two valid reasons exist for according priority to the Nolin survey. In the first place, the Lockard grant excludes, among other prior entries, an entry of 200 acres by *John* Nolin. The Calvin Nolin patent recites that the grant is based on *part* of a warrant of the Harlan County Court, and is issued to Calvin Nolin, "assignee of John Nolin." The survey certificate on which the Calvin Nolin patent was issued recites that the survey was made for John Nolin. It is reasonable to assume, then, that the Calvin Nolin land was part of the John Nolin entry which was specifically excluded from the Lockard grant.

■ In the second place, the statute, KRS 56.230, required the county surveyor to survey entries in the order in which they were made. There is a presumption that the surveyor performed his statutory duty, and therefore we must presume that he made the Nolin survey on June 24, 1873, because it was the first entry, and then, later in the day, began the Lockard survey of several days' duration. As to the presumption of performance of duty, see Asher v. Brashear, 90 S.W. 1060, 28 Ky.Law Rep.

1012, 1013; Oney v. Lovely, 151 Ky. 651, 654, 152 S.W. 785; and Combs v. Adams, 182 Ky. 762, 769, 207 S.W. 691.

■ Another reason that might be given for according priority to the Nolin grant is that the underlying principle of the statutes relating to appropriation of land seems to be that priority of title is to be determined according to the order in which some *record* of the claim was made. The first entry will control because it is the first record of the claim. In the absence of evidence as to the dates of entry, it would seem that the first recorded survey should control. See Goosling v. Smith, 90 Ky. 157, 13 S.W. 437. In the case before us, the Nolin survey was first recorded in the surveyor's records, because the certificate bears date on the day the Lockard survey began. Obviously, the Lockard survey could not have been recorded until it was completed.

We will now consider the question of whether the Nolin patent was located as covering the land in controversy. As concerns general location, the patent locates the 100 acres as being on the side of Pine Mountain, on the waters of Laurel Fork. The land in controversy lies near the top of Pine Mountain above Laurel Fork, between a B. F. Nolin patent on the west and a Wilson Howard patent on the east, and above a William Turner patent on the north. Several long-time residents of the community testified that Calvin Nolin, prior to his death in 1930, had always claimed to own the tract near the top of the mountain, between the B. F. Nolin and Howard patents and above the Turner patent.

As concerns specific location, the question is whether certain trees at the beginning point and at the end of the first call were actually located, and whether trees were marked along the lines of the boundary. The beginning point in the Nolin patent is "a hickory, poplar and ash," and the line then runs S 60° W 20 poles to two lynns and a sugar tree. The line continues in the same direction 280 poles, and all the corners in the roughly rectangular tract are identified by stakes only, which of course have long since disappeared.

The appellee's surveyor, Mr. Lambert, testified that the beginning point was pointed out to him by the appellees, and he found there an ash tree that had been partly cut down but which still bore a surveyor's mark. There also was a poplar stump, and a hickory "still marked." Running with the first call S 60° W 20 poles, he found two lynns and a sugar tree. He said that all three trees were there and were marked. He further testified that he ran out the remaining lines and found marked trees along the lines, and marked trees at the northwest corner. He said the marks were old.

In rebuttal, the appellant introduced his surveyor, Mr. Dixon, and two other witnesses, who had gone on the land with the appellees and endeavored to locate the patent. Dixon testified that at the alleged beginning point designated by the appellees, there was a "slabbed over" ash tree, which bore no surveyor's marks. There was a poplar stump 27 feet away from the ash, and a small hickory "bush" some 4 feet away. Continuing along the first call, he found a sugar tree stump and a cluster of several lynn sprouts at the end of the call. Running out the lines of the patent, he found no marked trees at all, except some which he himself had marked with paint on a survey of the appellant's lands several years before. The other two witnesses corroborated Dixon.

Dixon further testified that following Calvin Nolin's death in 1930, the Nolin heirs employed him to survey the Nolin lands for division, and he surveyed two tracts to the east and west of the tract in controversy, down the mountain, and the heirs at that time did not make any claim to the tract in controversy. A surveyor named Cox, who was employed by the appellees before they employed Lambert, testified that he had endeavored to locate the Nolin patent and had found no marks by which to do so. One of the Nolin heirs testified that a few years before this lawsuit was filed, he went on the land with the appellees and spent two days in a fruitless effort to locate the corners and lines of the Nolin patent.

While the rebuttal testimony for the appellant casts some doubt on the credibility of the testimony of Lambert, it does no more than that. The appellant's witnesses agree that there was at least a sugar tree stump and some lynn sprouts at the point which would be the end of the first call of the patent. This tends to verify the location of the beginning point selected by Lambert. In addition, there is the evidence placing the Nolin patent in the general location of the land in controversy.

We are not convinced that the finding of fact by the Chancellor was erroneous.

The judgment is affirmed.