## Combs, et al. v. Adams.

(Decided January 16, 1919.)

### Appeal from Letcher Circuit Court.

1. Public Lands—Entry and Survey.—The survey, which will render void a subsequent entry, survey or patent, must be a valid survey.
2. Public Lands—Conflicting Entries.—An entry upon a junior patent, which laps upon a prior survey of another does not give the junior patentee possession of the lap, unless his entry is made within the lap.
3. Adverse Possession—Champertous Possession.—A possession, which renders a sale and conveyance of the land, champertous, must be an adverse possession, which, if continued for the statutory period, will ripen into title.

4. Public Lands—Possession.—One having a valid survey of unappropriated lands, and entering thereon, with the intention to possess the lands to the extent of the boundaries of the survey, is in actual possession of the entire boundary.

5. Public Lands—Equitable Assignment.—A sale and conveyance of the land, embraced within a valid survey, is an equitable assignment of the entry and survey, to the vendee.

6. Public Lands—Record of Survey.—The record of a survey of vacant and unappropriated lands, made by the county surveyor, upon the book, upon which he is required, by law, to keep the record of such surveys, in the absence of any evidence showing its invalidity, will be presumed to be the record of a valid survey.

7. Public Lands—Survey and Patent.—A survey and a patent, without a preceding entry, is void, where preceding the survey and patent, an entry had been made upon the land by another.

8. Public Lands—Entry, Survey and Patent.—The statute, which declares an entry, survey or patent of land, which has been previously entered, surveyed or patented to be void, was not designed to make void, the patent of one, who was, lawfully, entitled to obtain a patent, but, its purpose was to prevent interference, by intruders, upon the lawful entries, surveys and patents of others.

D. D. FIELDS & DAY and MORGAN & NUCKOLS for appellants.

BLAIR & HAWK, ROBERT BLAIR and W. G. DEARING for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

This action was instituted by the appellants, John W. Combs, and Henry Combs, whom, we will, hereafter, call the plaintiffs, against the appellee, Elihu Adams, whom, we will, hereafter, call the defendant, to recover, from the defendant, the possession of a tract of land, containing 29.64 acres, and damages for its detention. When a trial was had, at the conclusion of all the evidence, the court directed a verdict, for the defendant, and, thereafter, rendered a judgment in accordance with the directed verdict of the jury, and dismissing the petition. From the judgment, the plaintiffs have appealed, and the question to be determined is the correctness of the ruling of the trial court, which directed a verdict for the defendant. The answer was a traverse of the allegations of the petition; a claim of title in the defendant; a plea of adverse possession of the lands for a time, exceeding the statutory period, necessary to create title in the defendant; and that the title of plaintiffs, if any, was champertous and void. The averments, making the various pleas, were denied by replies. The answer, also, con-

tained an averment, that previous to the entry, survey
and patent under which the plaintiffs claim title,
the land had been entered, surveyed, and patented to one
Shipp and others. The plaintiffs plead, in avoidance of
that defense, and the plea was abandoned, and no evi-
dence was offered to sustain it. When the evidence was
concluded, it had been proved, that on the 27th day of
December, 1867, a survey of one hundred and fifty acres
of land had been made by the county surveyor, for Wes-
ley Breeding, as the assignee of I. D. Stamper, by virtue
of an appropriation of it, under a warrant, issued by the
county court, to I. D. Stamper. The survey was duly en-
tered upon the books of the county surveyor, required by
law, to be kept for the purpose of recording surveys of
entries of lands, appropriated as vacant lands, under
chapter 127 Ky. Stats. Across the lands, embraced by
the survey, and near the western side, and in a general
direction, from the south to slightly west of north, there
runs a ridge, which makes the watershed, between the
waters of Elkhorn branch and Mitchell's branch. These
branches, are tributaries of Rock House creek. The por-
tion of the lands, embraced in the survey, which lie on
the east side of the ridge, and between the top of the
ridge and Mitchell's branch, are the lands, which are in
controversy, in this action. Wesley Breeding had a resi-
dence upon, and lived upon the lands embraced by the
survey, made in his name, at the date of the survey, but
his dwelling was upon the portion of the lands, which lay
to the westward of the ridge. He continued to reside
upon the lands, until some time, previous to the year,
1870, when he sold, and by deed, conveyed the lands, or
at least a portion of them, which lie to the westward of
the ridge, to George A. Combs. Combs, immediately,
moved into the house, which had been occupied by Breed-
ing, and continued to reside there continuously since, for
a period of nearly fifty years. At the time Breeding oc-
cupied the lands, he used and cultivated such of them, as
were suitable or which he desired to cultivate. After
Combs came into possession, under the purchase from
Breeding, he removed the timber from certain other por-
tions of the land, and cultivated and used them, and as
he testified, claimed to own the lands to the extent of the
boundaries of the Breeding survey, but, he did not en-
close or make any use of the lands, to the eastward of the
ridge, which are, now, in controversy. George A. Combs

did not undertake to carry the Breeding survey into a grant, but, on the 14th day of February, 1870, he caused an entry for one hundred acres of land, upon the Elkhorn branch, to be made, by virtue of warrant No. 163, from the county court, and thereafter, on the 24th day of March, 1871, he caused a survey to be made, which is recorded upon the surveyor's books, of one hundred and fifty acres of land, and which the record of the survey recites, was appropriated by virtue of warrants No. 163 and No. 4. This survey is identical with the Breeding survey. It embraces the same lands as the Breeding survey, and thus includes the lands in dispute. Thereafter, a patent was granted to George A. Combs, on the 15th day of June, 1872, for the lands embraced, in the survey made for him, under the entry made on the 14th day of February, 1870. The patent recited that the survey was made on March 24th, 1871. Since obtaining the patent George A. Combs has resided within the boundary of the patent, and testifies, that he has claimed, at all times, to the extent of the boundaries of the patent, until in the year, 1907, he conveyed, the eastern portion of the tract, including the land in dispute, to the plaintiffs, John W. Combs and Henry Combs.

On the 13th day of February, 1871, J. B. Fitzpatrick, caused an entry, for one hundred acres, to be made upon the lands lying to the eastward of the top of the ridge, and including the lands, in controversy. Following a survey of his entry, a patent was granted to him, on the 17th day of June, 1872. The land within this patent was conveyed to O. D. Gibson, and by him to John Breeding, and from him to Peter Adkins. Peter Adkins owned and resided upon other lands, which adjoin the lands embraced by the patent to Fitzpatrick, for thirty years, when he conveyed all of his lands to Moses Adkins, who conveyed the same to the defendant, Elihu Adams. Neither Adams, nor any of his predecessors in title, have ever resided upon, nor had any improvements upon the portion of the lands, in controversy, until since the conveyance by George A. Combs to the plaintiffs. Since that time, Adams has entered upon the lands, in controversy, and made a clearing, and enclosed the cleared portion with a fence. There was evidence, which tended to show, that when George A. Combs caused the survey of the lands, wthin Breeding's survey, to be made, presumably, at the time the survey was made, under the entry, upon

which the patent to him, was issued, he marked the line around the land, in controversy, to some extent, though how well marked, does not appear.

(a)   Assuming, for the present, that the survey made of the lands, covered by the patent to George A. Combs, by Breeding, was a valid survey, the record, then, presents this state of case.   Neither Fitzpatrick, nor any of his successors, in title, including the defendant, could have any title to the 29.64 acres sued for, as it is undisputed, that the survey of Breeding, includes these lands and is prior to the entry, under which Fitzpatrick made his survey and obtained his patent.   The statute, section 4704, Ky. Stats., in very plain terms, provides, that, "Every entry, survey or patent, made or issued under this chapter, is void, so far as it embraces lands, previously entered, surveyed or patented."

The survey, of course, which will render void a subsequent entry, survey or patent, must be a valid one, authorized, by law.   Neither, could Fitzpatrick nor any of his successors, in title, ever have had actual possession in fact, or by construction, of the lands, in dispute, until the defendant, less than fifteen years before the commencement of this action, entered upon and enclosed a portion of it.   The lands, in dispute, are covered by a lap of Fitzpatrick's patent upon Breeding's survey.   The patent, being junior to the survey, was void to the extent of the interference, and an actual possession, by Fitzpatrick or his successors, in title, of the lands, covered by the patent outside of the lap, did not give him, or them, actual possession, by construction, of the lands, within the lap, although his or their entry upon his patent, may have been with the intention, to possess the lands, to the extent of the boundaries of his patent.   The constructive possession of the lap, being in Breeding, or his vendees, the constructive possession claimed by Fitzpatrick, could not displace that of Breeding and his successors.   To oust the possession of Breeding and his successors, Fitzpatrick would have had to have taken actual possession of the lands within the lap, by enclosing them, or making an improvement, within the lap, which was never done, until as above stated.   Jones v. McCauley, 2 Duv. 14; Trimble v. Smith, 4 Bibb, 257; Miller v. Humphries, 2 Mar. 447; Shreve v. Summers, 1 Dana 239; Moss v. Currie, 1 Dana 266; Gregory v. Ford, 5 B. M. 471; McGowan v. Crools, 5 Dana 65; Jones v. Chiles, 2 Dana 25; Wickliffe v. Ensor, 9 B. M. 260; Hord v. Bodley, 5 Litt. 88.

Hence the defendant, nor either of his predecessors, in title, could sustain a title to the lands, in dispute, by a claim of adverse possession, for the statutory period. For the same reason, the contention, by him, that the sale and conveyance to plaintiffs by George A. Combs, was champertous, failed, as the defendant was not in adverse possession of the lands, nor any part of them, at the time, they were conveyed to the plaintiffs. A possession that will make a sale of lands champertous, must be an adverse one, which will ripen into a legal title, when it exists the statutory period. Interstate Investment 8 v. Bailey, 29 R. 468; Anderson v. Daugherty, 169 Ky. 309. The occasional cutting of trees, from the disputed land, by the defendant, or his predecessors, did not create an adverse possession in him or them. Corkey v. Lewis, 15 B. M. 27; Wickliffe v. Ensor, 9 B. M. 253; Young v. Withers, 8 Dana 165; Wilson v. Stivers, 4 Dana 634; Smith v. Mitchell, 1 Mar. 106.

(b). With the assumption, that the Breeding survey, was a valid one, upon the record, this further state of case exists. Breeding had the superior right to the possession of the lands, embraced within the survey, and an inchoate title to them, and residing thereon, he was in the actual possession of such of them as had been improved, or enclosed, and the constructive actual possession of all the lands, within the survey, to the extent of its boundaries, where no one else had an actual possession. When he sold and conveyed the lands to George A. Combs, if he sold him all the lands within the survey, and Combs entered, thereon, with the intention to possess the lands to the extent of the survey, he, thereby, became in the actual possession, to the extent of the boundaries of the survey and of his deed. McLaurin v. Salmons, 11 B. M. 96; Hoskins v. Cox, 2 B. M. 306; Beeler v. Coy, 9 B. M. 312; Smith v. Lockridge, 3 Litt. 19; Fox v. Hinton, 4 Bibb 559; Thomas v. Harrow, 4 Bibb 559; Maury v. Waugh, 1 Mar. 452; Baird v. Belle, 1 Duv. 384; Gruhler v. Wheeler, 12 B. M. 183; Taylor v. Shields, 5 Litt. 296; Briscoe v. McGee, 1 Mar. 190; Taylor v. Buckner, 2 Mar. 19.

Such an adverse possession, if continued, for fifteen years, vested George A. Combs, with the legal title to the lands, within the survey, and within the boundaries of his deed, regardless of his having, or not having a patent for the lands, and he was enabled to convey a good legal title to the plaintiffs.

The sale and conveyance, by Breeding to George A. Combs, of the lands, embraced within his survey, operated as an equitable assignment of Breeding's entry and survey to Combs and transferred to Combs, the right of Breeding to carry the survey into a grant. No one else, then, had a right to obtain a patent for the lands, and Combs had a right to do so, and, hence, the obtention of a patent by him, although, not based upon the survey of Breeding, was not void, on account of the survey for Breeding, as the statute, which renders void a survey or patent of lands, which have been, previously, entered, surveyed or patented, was not designed to prevent one, who has a right to obtain a patent from doing so, but, the purpose and design of that statute, is, to protect the rightful holder of an entry, survey or patent, against an intruder. Hence, if the conveyance, from Breeding to Combs, embraced the lands, in dispute, and the survey of Breeding was a valid one, the patent to Combs, embracing the same lands, was not void, but completed a title in Combs. The deed, from Breeding to Combs, was not offered in evidence, and the proof of its contents and effect, was proved by parole, by each of the parties and without objection. The evidence, however, was contradictory, as to whether the sale and conveyance, by Breeding to Combs, embraced the lands, in dispute. There was evidence, which tended to prove, that the deed, from Breeding to Combs, covered all the lands, embraced in the Breeding survey, while there was other evidence, which conduces to prove, that it, only, embraced the lands in the Breeding survey, which lie to the east of the ridge, which divides the waters of Mitchell's branch from those of the Elkhorn, and thus does not embrace the lands, in dispute. If the latter contention, is correct, then, the patent of Combs, so far as it embraces lands within the Breeding survey, which lie to the eastward of the ridge, is void, because grants, for lands, which have previously, been entered, and surveyed, by Breeding, and to which Combs had no right to obtain a patent, as the conveyance to him, by Breeding, did not operate to transfer, to him, the benefit of the survey, so far as it embraced the lands to the east of the ridge. If the deed to George A. Combs, from Breeding, did not include the lands, in dispute, then, Combs, nor any one, claiming uder him, ever had actual possession of the lands, and hence, he, nor his vendees, could have a title growing out of adverse possession of

the lands, for the statutory period, as neither, Combs, nor his successors, ever enclosed, or ever improved or in any wise, exercised ownership, over the lands, in dispute.

(c) The contention is made, that in as much as there was no evidence offered or heard, showing an entry of Breeding, upon which his survey was made nor a warrant or order of the county court, authorizing the appropriation of the lands, embraced by the survey, that the court was in error in assuming, that the survey was valid. This, we do not think is tenable. The surveyor is a public officer, and charged, by law, with the duty of making surveys of the vacant and unappropriated lands, and with the duty of making a record of such surveys, and he is not authorized, by law, to make a survey, except when a warrant has been obtained, from the county court, which authorizes the holder to make an appropriation of the lands, and in the absence of anything, showing to the contrary, it must be presumed, that the surveyor did his duty, and that he did not make any record of the survey, except upon valid authority. This view is not contradictory of the doctrine announced in Mason v Fuson, 171 Ky. 133.

Hence, upon the record, as presented in the circuit court, the court was correct in assuming, that the survey of Breeding, was a valid one, but the court was in error in holding, that the fact of the survey, rendered the patent to Combs, void, and for that reason, that the plaintiffs' cause of action failed. The court should have submitted to the jury the issue, as to whether the deed, from Breeding to Combs, embraced the lands, in dispute, and if the jury found, that such was a fact, it should have been directed to find for the plaintiffs, otherwise, to find for the defendant.

(d) The contention, that the entries, under which the survey was made, upon which the patent to Combs, was based, did not embrace the lands, in dispute, has no merit, so far as concerns the rights of the parties to this action, if the Breeding survey was valid, and the sale and conveyance of Breeding to Combs, embraced the lands, in dispute, as the adverse possession by Combs for the statutory period before conveying the lands to plaintiff, vested him with the legal title, and, further, his patent was not void, if the facts existed, as above stated, as has heretofore been shown. If the Breeding survey was invalid, then Breeding had nothing to convey to Combs, and

Combs, or any one else was at liberty to appropriate the lands, in dispute. The title of plaintiffs would, in that case, depend upon the title acquired by George A. Combs, by virtue of his patent. The lands, in dispute, were not enclosed, at that time, nor described by a marked boundary, and the possession of Combs, extended, only, to the bounds of his enclosure. Conceding that the warrant, from the county court, No. 4, under which, in part, it appears, that Combs undertook to appropriate the lands, was not exhausted by previous entries under it, the evidence shows, that an entry, by virtue of it, was never made upon the lands, in dispute.

The entry, made by Combs, by virtue of warrant No. 163, is so vague and uncertain, that it does not indicate to any one, that it includes the lands, in dispute. The entry purports to appropriate lands, commencing upon the ridge and extending down the Elkhorn to a point below the barn of Combs, in a direction from the beginning point, away from the disputed lands, nor is it possible to determine whether the lands, intended to be appropriated by the entry, are situated to the eastward or westward of the Elkhorn. The patent recited, that the lands, covered by it, were appropriated, by virtue of warrants No. 4 and No. 163. The entry by virtue of warrant No. 163, was made by Combs, on the 14th day of February, 1870, but survey was not made, until February 25th, 1871, as the record of the survey recites, or on the 24th day of March, 1871, as the patent recites. Previous to the survey made by Combs, an entry was made by Fitzpatrick upon the lands, in controversy, on the 13th day of February, 1871, which was, thereafter, surveyed and carried into grant, by a patent to him, on the date as heretofore stated. The entry made by Fitzpatrick, covered and appropriated the lands, in controversy, if they had not theretofore, been appropriated by Breeding. Hence, the survey made by Combs, and the date of the patent granted to him, for the lands, in dispute, were prior to the survey made for Fitzpatrick, and the patent to him, but, the entry of Fitzpatrick, was prior to the Combs survey and patent, as it does not appear, that Combs made any entry at all, upon the lands in controversy, under which his survey was made, and his patent granted. Then the provisions of Ky. Stats., section 4704, would render void the survey and patent of Combs, as a survey or patent of

lands, which has been, previously, entered, is void. Fitzpatrick having made a valid entry, on the 13th day of February, 1871, it was followed by a survey of his entry, on the 10th day of April, 1871. He could not be deprived of the benefit of his entry, by a subsequent survey and patent, by and to another, when the land was subject to entry at the time, he made it. Unappropriated lands are subject to entry, if they have not been, previously, entered, surveyed or patented. The previous entry or survey must be a valid one. Collinsworth v. Bevins, 125 S. W. 1060; Stansbery's Heirs v. Pope, 6 J. J. M. 189; Mason v. Fuson, 171 Ky. 113. An entry to be valid as against a subsequent locator, must give the situation of the land it calls for with such definiteness, that one may, with reasonable diligence, be able to find the land attempted to be entered. Stephens v. Terry, 178 Ky. 135, and cases there cited.

For the reasons above stated, the judgment is reversed and cause remanded for proceedings not inconsistent with this opinion.