**COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,**

v.

**H. L. TUCKER and Zetta Tucker, et al.,
Appellees.**

Court of Appeals of Kentucky.

April 23, 1965.

Robert F. Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., L. A. Faurest, Elizabethtown, for appellant.

Carmol D. Cook, Lake & Cook, Hartford, Sam T. Jarvis, Jarvis & Cornette, Greenville, for appellees.

DAVIS, Commissioner.

The Department of Highways of the Commonwealth asks reversal of the judgment of $14,500 obtained by appellees in this condemnation action. The basis upon which the reversal is sought is the contention that the verdict is excessive and not supported by the evidence.

The present condemnation is for right of way necessary for construction of the Western Kentucky Parkway. Appellees owned a tract of about 235 acres near Rockport. The tract was cut in two by the railroad right of way of Illinois Central Railway Company. The present condemnation relates only to the tract lying south of the railroad; by common consent the parties have treated this action as if the 38 acres lying south of the railroad is the entity involved; we shall too.

The taken right of way embraces 12.12 acres of land lying south of the railroad. The 38 acre tract is severed by the non-access right of way, so that approximately 11.21 acres will lie north of the Parkway, just south of the railroad. About 14.88 acres of land will lie south of the Parkway, and no access to it will be available to appellees; it is landlocked. The 38 acre tract had not abutted a public road prior to the taking, but was served by a private passway which crossed the railroad at grade. This same access will serve the tract of 11.21 acres lying between the Parkway and the railroad.

Witnesses for both litigants agree that the entire 38 acres is underlain with a seam of No. 9 coal; all of the witnesses agree that the seam is of merchantable quantity and quality. The only real issue is whether the elevation above sea level is sufficient to admit of this coal's being mined economically by the strip mine method. Witnesses for the appellant assert that the coal seam is found at elevations ranging from 293 to 336 feet above sea level. It is shown that the normal pool stage of the nearby Green River is 364 feet above sea level, thus placing the coal seam about 20 to 60 feet below

the normal summer level of the river. It is recognized by all parties that in flooding periods of the Green River (which occur quite often in the winter and spring) the entire surface of the 38 acre tract is submerged.

Moreover, evidence was presented for appellant showing that the nature of the soil is such that it is not ideally suited to strip mining procedure. It was explained that the soil was "marine mud" and that by reason of its consistency it would not stay in a pile, but would slide and crawl. This condition was pointed to as a factor lessening the land's coal potential. The appellant's witnesses recognized that the land had a "speculative" value as potential coal land, but were of the view that under existing conditions it could not be mined profitably, nor sold as coal land on the market. Accordingly, the appellant's witnesses ascribed a before market value of $3,821 to the land, with after market value of $912.

In contrast, the witnesses for appellees expressed the view that the land has present value as coal land and that the low elevation is not such a factor as would preclude its sale as such. Their before values ranged from $1500 to $1800 per acre, but they asserted that the remaining land would have no after value because of its size and proximity to the railroad. As noted, the jury's verdict was for $14,500; this was reached by the jury's fixing the before value of the 38 acres at $15,200 and the after value of the remaining land at $700. Considering the round figures at 38 acres, the jury's before value finding was $400 per acre.

The appellant insists that the evidence for the appellees is so lacking in probative value as to be insufficient to support the verdict. The prime basis for this assertion is the fact that the comparable sales used by witnesses for appellees were shown to have been at sea level elevations higher than 400 feet, and that no coal had been mined in Ohio County at a surface sea level lower than 400 feet. This contention is buttressed by an official topographical map of the area. However, although no such mining at a level below 400 feet is shown, it is not claimed by appellant that its evidence conclusively demonstrates that no such mining has ever occurred in the county.

On the basis of the principles enunciated in Commonwealth, Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, appellant contends that the verdict is excessive and unsupported by evidence of appropriate probative value. We are not able to accept this argument. As noted, the jury's verdict and the consequent judgment were far less than the values asserted for appellees; the verdict was greater than the values expressed by witnesses for appellant, but not by nearly so much as it fell short of the values fixed by witnesses for appellees. Moreover, the witnesses for appellant conceded the ever present prospect that new developments may overcome the flooding difficulties they said now destroy the land's value for coal purposes.

■ This case differs from the factual situation in such cases as Commonwealth, Dept. of Highways v. Gearhart, Ky., 383 S.W.2d 922. In the latter case there was sharp dispute as to whether coal was present in marketable quantity and quality, whereas that fact is admitted in the present case. The issue here, as noted, is whether the physical situation is such that the property has present market potential as coal land. There was a direct conflict in the evidence on that point which emanated from witnesses qualified to express opinions in the premises. Although the witnesses for the appellees did refer to "comparable" sales which were not truly "comparable" to the extent of the difference in sea level elevations, this did not serve to utterly destroy the probative value of their evidence. It is significant that the jury's verdict was substantially less than the acreage price paid in the "comparable" sales. Under all the circumstances of this case we are unable to say that the verdict is so excessive as to strike us at first blush as having been rendered as the result of passion or prejudice. We believe the verdict is

adequately supported by competent evidence of sufficient probative value.

 We refrain from discussion or consideration of certain points asserted in appellees' brief by way of "cross-appeal," since no cross-appeal was perfected as prescribed by CR 74.