COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

Winona SNYDER et al., Appellees.

Court of Appeals of Kentucky.

May 14, 1965.

Robert F. Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, C. E. Skidmore, Dept. of Highways, Frankfort, L. A. Faurest, Elizabethtown, for appellant.

William P. Donan, Greenville, W. Gordon Iler, Owensboro, for appellees.

DAVIS, Commissioner.

The appellees obtained judgment for $20,-000 in this highway condemnation action. The Department of Highways asks that the judgment be reversed on the grounds (1) that prejudicial evidence was admitted from an unqualified witness, and (2) the evidence fails to support the verdict.

Appellees are the owners of a tract of land which contained 131.4 acres before the taking. The land lies on the east side of Green River at the boundary line separating Ohio and Muhlenberg counties. The appellant recognizes that a portion of the land is underlain with a seam of Western Kentucky No. 9 coal in merchantable quantity. There is some contrariety in the proof as to the total acreage of the coal deposit; there is also some difference in opinion as to whether some of the coal lies beneath such great overburden as to preclude its being extracted by the strip mine method.

There was no improvement on the land at the time of taking. The record is confusing as to just what public roadway afforded access to the tract prior to the taking, although there is no question that access to the navigable Green River was available to the land before the taking.

The right-of-way taken is for the West Kentucky Parkway; the right-of-way is a strip running in an east-west direction, containing about 14.34 acres. The taken strip substantially divides the original boundary in two equal-sized tracts. The West Kentucky Parkway is a non-access highway, and there is no provision for access between the severed tracts.

A mining engineer testified for the Department and expressed his opinion that the coal resting under overburden in excess of seventy feet could not be economically recovered by the strip mine method; it was the opinion of the witness that underground mining methods would be required to sever such heavily overlain coal. Witnesses for the appellees, experienced in mining procedures in the area, disputed this contention.

It was shown that the normal pool stage of the adjacent Green River is at 364 feet above sea level and that the elevation of the top of the coal seam ranges from ten to fifteen feet below that elevation. It was explained that this condition creates some risk in mining the coal, but would not preclude such mining.

The 14.34 acres of taken right-of-way include 1.79 acres of strippable coal and 7.0 acres of coal recoverable by underground methods (according to the Department's evidence). Also in the taking are 5.55 acres under which no coal appears. An additional 1.38 acres of strippable coal will be lost because of its proximity to the new road and the requirement that it be left in place for lateral support of the highway; in the same manner another 1.75 acres of the deep mine coal will be unavailable.

It was shown that coal had been withdrawn from under six acres by deep mine methods more than fifty years ago. The precise location of that old works was not known to the witnesses for either side, although it is suggested for appellant that the six acres of coal may have come from under the seven acres of deep mine coal embraced in the right-of-way.

We have had occasion to be amazed by the wide range of evaluation evidence in the many condemnation cases which have crowded our docket in recent months, but we do not recall one in which the disparity

is so marked as it is in the present case. We summarize the valuation evidence:

### Appellant's Witnesses

| Before Value | After Value | Difference |
|---|---|---|
| $29,048 | $23,448 | $5,600 |
| $33,246 | $28,093 | $7,105 (sic) |
| $23,000 | $20,486 | $2,514 |
| $26,280 | $24,400 | $1,880 |

### Appellees' Witnesses

| Before Value | After Value | Difference |
|---|---|---|
| $183,400 | $13,100 | $170,300 |
| $ 75,000 | $10,000 | $ 65,000 |
| $ 69,000 | $11,500 | $ 57,500 |
| $ 90,000 | $20,000 | $ 70,000 |
| $ 80,000 | $23,000 | $ 57,000 |

In its verdict the jury found the before value to be $40,000 and the after value to be $20,000; it accordingly awarded to the appellees the sum of $20,000 as the difference.

The first question raised by appellant relates to the qualification of the witness Clyde Brown, Jr. This witness had first stated the before value to be $183,400 and the after value as only $13,100, with the difference being $170,300. However, a full reading of his evidence discloses that he substantially amended his evidence so that he effectively testified that he meant to place a value of $1200 to $1400 per acre only on those acres having underlying coal; he had said that he considered that 27 to 30 such acres were in the original tract. During the course of Brown's direct testimony the following occurred:

"Q27. In your business of buying and leasing coal, are you familiar with the coal values of coal lands values in Ohio and Muhlenberg Counties?

"A. I spent some two or three million dollars, I have been pretty good at it, I have made a lot of mistakes sometimes.

"Q28. But are you familiar with the value of this particular tract?

"A. Well I offered them $40,000 for it.

"Mr. Faurest: We object to that offer.

"Court: You will not consider what he offered, that is not proof."

It was developed in the testimony of witness Brown that he had had wide experience in coal mining and in purchasing coal properties. Obviously the trial court correctly sustained the appellant's objection to the statement that Brown had offered $40,000 for the boundary. (Hindsight might suggest that the appellant would have fared better by foregoing the objection, but that is not before us.) The witness told in great detail how he believed the coal could have been taken profitably from the land before the taking. He explained why he believed that the taking virtually destroys the coal value of the property. We are of the view that he was sufficiently qualified by training and experience to make the expressions of opinion he did, and that the court properly overruled appellant's motion to strike his evidence. Com. Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, 475.

Neither are we able to find merit in appellant's second contention. As heretofore mentioned, there was an amazing gulf between the values fixed by witnesses for the respective parties. Nevertheless, there was an abundance of evidence supporting the proposition that similar coal lands in the immediate area had sold for sums substantially higher than the amount allowed by the jury. We confess that the verdict appears to be quite liberal, but we are not able to say that it is so inordinately generous as to appear at first blush to have been rendered as the result of passion and prejudice. We do not detail the factors ascribed by witnesses for appellees as bases for their evaluations; it suffices to say that we have carefully examined the record and are impelled to the conclusion that the evidence for appellees is of sufficient probative

value to sustain the verdict. Under these conditions we may not disturb the judgment. Com. Dept. of Highways v. Tyree, Ky., 365 S.W.2d 472, 478.

The judgment is affirmed.