**C.H. HAMMONDS and his wife Dean Hammonds, Billy Watson and his wife Donnie Watson, Plaintiffs-Appellees,**

v.

**INGRAM INDUSTRIES, INC., Defendant-Appellant.**

**No. 81–5817.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1983.

Decided Sept. 6, 1983.

Rehearing Denied Nov. 1, 1983.

James G. Apple (argued), Stites, McElwain & Fowler, Louisville, Ky., for defendant-appellant.

Thomas L. Osborne (argued), Osborne, Deatherage & Fletcher, Paducah, Ky., James A. Harris, Jr., Paducah, Ky., for plaintiffs-appellees.

Before MERRITT and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Ingram Industries, Inc. appeals from a judgment entered on a jury verdict in a trespass action for damages of $345,000 arising from Ingram's dredging sand from several islands in the northern half of the Ohio River which had been patented by C.H. Hammonds and Billy Watson. On appeal, Ingram advances numerous contentions, both legal and factual, concerning the existence of the islands, the nature of the trespass involved in the dredging, the attachment of riparian rights to islands, and the amount of damages awarded. Because we find each of Ingram's contentions to be without merit, we affirm the judgment of the district court.

## I. Background

On October 2, 1966, Watson sighted five islands in the northern half of the Ohio River in Livingston County, near Ledbetter Landing, Kentucky. Watson informed Hammonds of his discovery. Following a survey of the islands, Watson, Hammonds and their spouses (plaintiffs) patented the islands from the Commonwealth of Kentucky for $5.00 and obtained the deed in January, 1967, pursuant to Ky.Rev.Stat. § 56.210. The islands, which occupy approximately 3.8 acres, are located between mile 928.7 and mile 929.3 on the Ohio River. Although plaintiffs attempted to cultivate the islands, they were unsuccessful and used the islands for recreational purposes only.

The first confrontation between Ingram and plaintiffs occurred in 1974 when plaintiffs filed a formal protest with the United States Corps of Engineers (Corps of Engineers) concerning Ingram's application for a permit to dredge sand and gravel in the Ohio River from mile 922 to mile 937. On February 25, 1974, Charles Everhart, Ingram's president, in a letter to plaintiffs, stated:

> I can assure your clients that if these islands are located in the area, we shall not disturb either the islands or their riparian accretions. Since we are unable to identify the islands in question, it would be most helpful if we could be furnished a map or sketch of their location. In any event, if they are there, we shall not disturb them in any way.

On March 23, 1974, plaintiffs furnished Ingram with copies of the 1966 island survey and the deed. As a result of the communi-

cations, plaintiffs dismissed their protest with the Corps of Engineers. Apparently, there was no further contact or communication between Ingram and plaintiffs for five years.

On September 21, 1979, Ingram began dredging in the northern half of the Ohio River at approximately mile 928.8. When plaintiffs discovered the dredging, they protested to Ingram. In a letter dated October 12, 1979, Ingram denied that it had dredged in the immediate area of the islands but stated that it "would not hesitate to dredge in the general area at any time these islands are nonexistent at pool stage."[1] According to Ingram's records, dredging operations were conducted intermittently from September 21, 1979 through January 7, 1980 at mile 928.8, resulting in the removal of 128,400 tons of sand from that area.

On January 10, 1980, plaintiffs initiated a diversity action in the United States District Court for the Western District of Kentucky seeking damages and equitable relief. A hearing was held on February 29, 1980, on plaintiff's motion for a temporary injunction, after which the district court entered an order concerning an agreement reached by the parties. A jury trial on the merits of the case was held in May, 1981. At trial, plaintiffs contended that Ingram intentionally trespassed on their islands and was liable for the value of the sand dredged from the islands. Ingram, at the close of plaintiffs' case, moved for a directed verdict on the ground that plaintiffs had failed to prove the existence of the islands, their standing as owners of the islands to pursue a trespass action, and their damages. The court denied the motion. The jury returned a verdict for plaintiffs and awarded damages in the amount of $345,000. The district court denied Ingram's motion for judgment NOV and for a new trial.

Ingram perfected an appeal, assigning numerous errors that raise issues concerning the existence of the islands, the nature of the trespass, riparian rights, and the determination of damages.

## II. Existence of the Islands

Ingram argues that the trial court erred in denying its motion for judgment NOV because of the nonexistence of the islands at the time of the alleged trespass. Ingram presented three bases for its position: (1) plaintiffs failed to prove the continuing existence of the islands; (2) the islands were merely dredge spoils that were not patentable; and (3) the correct standard for determining the existence of islands is existence at normal pool stage.

It is well-settled that the standard to be applied in reviewing a trial court's denial of a motion for judgment NOV is identical to that raised by a motion for a directed verdict. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). In *Scharfenberger v. Wingo,* 542 F.2d 328 (6th Cir.1976), Judge McCree described the standard as follows:

> Judgment notwithstanding the verdict is not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. *It should not be granted if there is a conflict in the evidence, and credibility of evidence is not to be considered in passing on a motion for judgment.* Greer v. United States, 408 F.2d 631 (6th Cir. 1969); Moore's Federal Practice, Par. 50.-07(2) (Second Edition). [Emphasis added.]

*Id.* at 333 (quoting *Reeves v. Power Tools, Inc.,* 474 F.2d 375, 380 (6th Cir.1973)).

### A. Continued Existence and Permanence of the Islands

Ingram argues that the plaintiffs failed at trial to establish that the islands they patented were in existence at the time of Ingram's alleged trespass and that they

1. A river stage is the elevation of the surface of the river above some datum at a given station. Normal pool stage is that stage of a river which would exist in the pool above a lock and dam if the level of the water at the lock and dam is at the minimum established by the Corps of Engineers for the purpose of navigation and if there were no flow in the river. At Lock and Dam 52, the Corps of Engineers has established the normal pool stage at 302 mean sea level.

were permanent.[2] Ingram's argument raises both factual and legal issues.

■ A factual issue is raised by Ingram's contention that the aerial photographs of the river which do not disclose the existence of the islands, the individual testimony that the islands ceased to exist after 1974, and the testimony that the islands varied in size and were generally underwater compel a finding that the islands ceased to exist or were impermanent. The standard of review, described above, precludes Ingram's prevailing on the factual issue because here the evidence is conflicting. As Ingram concedes, there was testimony that the islands existed above the water for eight to nine months of each year. Additionally, there was testimony that the islands were visible above water at the time of the trial. Because of the conflicting evidence, this court will not disturb the district court's denial of judgment NOV on the ground that the evidence compels a contrary judgment.

■ The legal issue raised by Ingram's argument is whether islands which are submerged for three months of each year may be permanent. The decisions of the Kentucky courts indicate that occasional flooding or periodic submergence of islands does not require a finding that the islands are not permanent. In *Turk v. Wilson's Heirs,* 266 Ky. 78, 83–84, 98 S.W.2d 4, 7 (1936), the court treated as an island land in the Mississippi River none of which is "more than a few feet above the water at ordinary stage of the river" and which periodically is submerged. More to the point is the finding in *Berry v. Snyder,* 66 Ky. (3 Bush) 266, 270–71 (1867), of the continuing identity of a sandbar even though that bar was covered by water for three to four months of each year, often to such depth as to "admit the largest and heaviest laden steamers plying on the river to pass over it." *Whitson v. Morris,* 304 Ky. 447, 201 S.W.2d 193 (1946), which is cited by Ingram, is not to the contrary. In *Whitson,* the court held that once a patented island is washed away its owners lose all proprietary interests in that land

and obtain none in any island that later might emerge. Although *Whitson* explicitly recognizes that islands might be washed away and disappear, as happened in that case where an island disappeared after being submerged for a number of years, it does not gainsay that an island's submergence effects its disappearance only if lasting for an extended period of time. *Id.* at 453, 201 S.W.2d at 196 ("rule of reappearance after submergence does not seem applicable where the submergence was in fact ... a complete disappearance for an extensive period."). Accordingly, there is no basis for holding that the trial court erred in not directing a verdict or granting judgment NOV for Ingram on the ground that plaintiffs failed to establish the continued existence and permanence of the islands.

### B. Islands as Dredge Spoils and Part of the Bed of the Stream

Ingram contends that the evidence established that the islands patented by plaintiffs were created by the settling of dredge spoils, *i.e.,* mud and sand loosened from the bed of the river by dredging performed by the Corps of Engineers in the area, and that such islands cannot be patented. These contentions are meritless.

■ As an initial point, the evidence cited by Ingram allows, but does not compel, the inference that the islands were created by the Corps of Engineers' dredging in the area of the islands. The evidence that the composition of the islands is similar to that of dredge spoils is corroborative of Ingram's factual contention, but the evidence that the area of the river near the islands is unstable supports an inference that the islands were created by natural accretions rather than by dredge spoils. Because the evidence would allow contrary inferences a directed verdict would not have been proper.

■ Apart from the factual considerations, Ingram's claim that dredge spoils are part of the bed of the stream upon which

**2.** Ingram concedes that the trial court properly instructed the jury that an island is a "body of

land surrounded by water, ... of a permanent character...."

protectable legal interests cannot be found is untenable. We have been able to find no authority for its claim and Ingram cites none. Much authority exists, however, for the proposition that artificially created islands can be owned. In *H.K. Porter Co. v. Board of Supervisors of Jackson County,* 324 So.2d 746 (Miss.1975), the court held that an island created from the dredge spoils produced by the Corps of Engineers' dredging of a channel could be owned so long as the landowner had not intervened in the production of the artificial accretion. Moreover, it is clear that even if the bed of the stream in the northern half of the Ohio River belongs to the Commonwealth of Kentucky, it does so only so long as the bed remains the bed. *See Harrison County v. Guice,* 244 Miss. 95, 140 So.2d 838 (1962) (state owns bottoms as bottoms); *State v. Gill,* 259 Ala. 177, 66 So.2d 141 (1953) (state holds title to bed of stream as bed and not to individual grains of sand or lumps of mud that may create new land). Where, as a result of dredging, gravel, silt and sand create an island, that island can be patented as authorized by the statutes of Kentucky. Accordingly, the trial court's denial of judgment NOV for Ingram was proper on both the factual and legal issues raised in Ingram's argument that the islands are not patentable because they are dredge spoils.

### C. Normal Pool Stage

■ Ingram next contends that the trial court erred in instructing the jury that for an island to be permanent it must be "visible above the surface of the water when the water is at *normal level.*" (Emphasis added). Ingram argues that the proper standard is "normal pool stage" at Lock & Dam 52, approximately eight miles downstream from the islands.[3]

Ingram's contention that the trial court erred in instructing the jury on the standard to be applied is meritless because the instructions properly state Kentucky law. In *Whitson v. Morris, supra* 304 Ky. at 453, 201 S.W.2d at 196–97, the court treated the issue of the boundary of an island as dependent on the existence of accretions that had grown up "above the surface of the water at *normal stage.*" *Id.,* 201 S.W.2d at 196–97 (emphasis added). Similarly, in *Turk v. Wilson's Heirs, supra* 266 Ky. at 83, 98 S.W.2d at 7, the court recognized the existence of an island based on its visibility "above the water at *ordinary stage* of the river." (Emphasis added). Because the trial court's use of "normal level" adequately apprised the jury of the standard applied in Kentucky, there was no error.

The Kentucky cases that have used the term "normal pool stage" do not require a contrary result. In *Coates v. Niven,* 517 S.W.2d 744 (Ky.1974), the court used the term not to refer to the water level maintained by the Corps of Engineers on a navigable river but to refer to the level of water of a state created lake at the dam. In *Commonwealth v. Tucker,* 389 S.W.2d 937 (Ky.1965), and *Commonwealth v. Snyder,* 390 S.W.2d 659 (Ky.1965), the court noted that the normal pool stage of the Green River is 364 feet above sea level in determining whether strip mining on neighboring tracts of land was economically feasible. In none of the cases was the normal pool stage used as a standard to determine whether islands were in existence.

### III. Intentional Trespass

The trial court instructed on both intentional and innocent trespass. The parties agree that the jury award reflects a finding of intentional trespass by Ingram on plaintiffs' islands. Ingram assigns three errors concerning intentional trespass: (1) that the trial court did not determine that plaintiffs lacked title to the easternmost part of the islands so that they could not maintain an action for trespass on that part; (2) that the evidence did not permit an instruction on intentional trespass; and (3) that the instruction on damages for an innocent trespass was erroneous.

### A. Easternmost Part of the Islands

Ingram contends that the trial court erred in not directing a verdict for it on the

---

**3.** *See* footnote 1 *supra.*

ground that the easternmost part of the islands lay to the south of the thread of the stream of the Ohio River as evidenced by plaintiffs' deed to the islands and its 1966 survey. Ingram argues that the trial court should have construed plaintiffs' deed to the islands rather than directing the jury that plaintiffs had no ownership in any island lying south of the thread of the stream.

■ The law is well-settled that the construction of a deed is a matter of law to be determined by the court. *Phelps v. Sledd,* 479 S.W.2d 894, 896 (Ky.1972); *Harmon v. Blackburn,* 278 Ky. 306, 308–09, 128 S.W.2d 730, 731 (1939). It is equally clear, however, that the jury should determine whether the land in controversy in a trespass action is covered by plaintiffs' deed. *Combs v. Adams,* 182 Ky. 762, 769, 207 S.W. 691, 694–95 (1919); *Flynn v. Sparks,* 11 S.W. 206, 206–07 (Ky.1889). *See also Jones v. York,* 299 Ky. 305, 308, 185 S.W.2d 404, 405–06 (1945) (treating question of title to land on which trespass occurred as question for jury).

■ In the instant case, Ingram stipulated to the validity of plaintiff's deed to the islands at trial. Accordingly, the issue at trial was whether Ingram trespassed on land covered by plaintiffs' deed. This question properly was presented to the jury because of the conflicting evidence as to the location of the dredging. *Combs v. Adams, supra; Flynn v. Sparks, supra.* Moreover, the trial court's instruction that plaintiffs did not have any ownership rights south of the thread of the stream was requested by Ingram and accurately states Kentucky law. *E.g., McGill v. Thrasher,* 221 Ky. 789, 299 S.W. 955 (1927). Additionally, the instructions as a whole provided a simple and direct method of submitting the issue to the jury and did not prejudice Ingram's rights. *See Jones v. York, supra,* 299 Ky. at 308–09, 185 S.W.2d at 406.

B. Instruction on Intentional Trespass

Ingram argues that the trial court erred in instructing the jury on intentional trespass on the ground that plaintiffs failed to plead that its trespass was willful, wanton or intentional. Ingram contends that because Kentucky treats the award of an intentional trespasser's gross profit as a penalty, but treats the award of an innocent trespasser's net profit simply as compensation, *Hughett v. Caldwell County,* 313 Ky. 85, 90–92, 230 S.W.2d 92, 96–97 (1950), plaintiffs were required, but failed, to explicitly plead an intentional trespass because the award of gross profit amounts to an award of special damages. Ky. Civ.Prac.R. 9.06. This argument is meritless.

■ As an initial point, plaintiffs' complaint afforded Ingram ample notice that plaintiffs were alleging an intentional trespass as evidenced by its demanding as damages the "reasonable value of the sand as dredged and taken from the plaintiffs' land." Moreover, it is clear that a trespass is assumed to be intentional and that once a trespass is proven the defendant has the burden of proving that the trespass was innocent. *Lebow v. Cameron,* 394 S.W.2d 773, 776 (Ky.1965); *Swiss Oil Corp. v. Hupp,* 253 Ky. 552, 560, 69 S.W.2d 1037, 1041 (Ky.1934). Finally, this was not an action for punitive damages which had to be pleaded and proven specially. *See Louisville Builders Supply Co. v. City of Richlawn,* 392 S.W.2d 438 (Ky.1965).

Ingram also argues that the evidence did not permit an instruction on intentional trespass because all of the evidence indicates that Ingram acted in good faith in dredging where it did. This argument is again without merit.

■ The law is well-settled that an intentional trespasser is one who trespasses knowing that he is wrong, while an innocent trespasser believes that he is right. *Lebow v. Cameron, supra,* 394 S.W.2d at 776; *Rudy v. Ellis,* 314 Ky. 524, 529, 236 S.W.2d 466, 468 (1951). As noted above, a trespass is presumed to be intentional and the defendant bears the burden of proving innocence. *Lebow v. Cameron, supra,* 394 S.W.2d at 776; *Swiss Oil Corp. v. Hupp, supra,* 253 Ky. at 560, 69 S.W.2d at 1041. In this case, the evidence did not compel the conclusion that Ingram had carried its bur-

den. Although the testimony of the captain of Ingram's dredge indicated that he had been instructed to avoid the islands and that he had not intended to encroach on them, it is neither conclusive nor sufficient to demonstrate that the trespass was innocent. *Swiss Oil Corp. v. Hupp, supra,* 253 Ky. at 560, 69 S.W.2d at 1041. Instead the circumstances of the trespass must be evaluated. On the one side, is the evidence that at the time of the dredging the islands were covered by water. On the other side, evidence was introduced that Ingram's president knew of plaintiffs' deed, knew the location of the islands, conceded that the islands had riparian rights, knew of a previous protest of a proposal to dredge in the area, and had promised in writing to avoid encroaching on the islands. This evidence was more than sufficient to raise a question for the jury as to the nature of the trespass. *Cf. Loeb v. Conley,* 160 Ky. 91, 169 S.W. 575 (1914) (no basis for claim of innocent trespass where evidence demonstrated that trespasser had actual notice of plaintiff's superior ownership). Accordingly, the trial court properly instructed on the issue of intentional trespass.

C.  Instruction on Innocent Trespass

Ingram contends that the trial court erred in its instruction that if the jury should find that Ingram was an innocent trespasser the jury should award net profits to plaintiffs. Ingram contends that the correct measure under Kentucky law is "customary royalty" or "value of the mineral in place".

■ Because the parties agree that the jury reached its verdict based on its finding that Ingram was an intentional, and not an innocent, trespasser, we need not resolve this issue. Nevertheless, we do note that, contrary to Ingram's contention, the Kentucky courts treat as well-settled the rule that innocent trespassers are liable for net profits. *Lebow v. Cameron, supra,* 394 S.W.2d at 776; *Hughett v. Caldwell County, supra,* 313 Ky. at 90–92, 230 S.W.2d at 96–97; *Delta Drilling Co. v. Arnett,* 186 F.2d 481, 486 (6th Cir.1950) (apply-

ing Kentucky law), *cert. denied,* 340 U.S. 954, 71 S.Ct. 574, 95 L.Ed. 688 (1951).

IV.  Riparian Rights

■ Ingram contends that the trial court erred in instructing that plaintiffs owned not only the surface of the islands but also the bed of the Ohio River to the thread of the stream north and south of the islands. Ingram argues that plaintiffs could have no ownership rights in the bed of the stream north of the thread of the stream. The argument presents the difficult question of whether the traditional rule that ownership of an island entails ownership of the bed of the river to the thread of the stream is applicable where the island is in the northern half of the Ohio River. *Compare Whitson v. Morris, supra* (applying traditional rule in case involving island in Mississippi River) *and Wilson v. Watson,* 144 Ky. 352, 138 S.W. 283 (1911) (same) *and McGill v. Thrasher, supra* (applying traditional rule in case involving island in Ohio River) *with Commonwealth v. Henderson County,* 371 S.W.2d 27 (Ky.1963) (holding that bed of the stream of the northern half of the Ohio River is not patentable) *and Ware v. Hager,* 126 Ky. 324, 103 S.W. 283 (1907) (same). We need not resolve this issue, however, because Ingram, by failing to object to the instruction at trial, did not preserve it for appeal. Fed.R.Civ.P. 51.

V.  Determination of Damages

Ingram contends that the trial court erred in its instructions regarding the value of the sand removed and in permitting plaintiffs to present evidence of the value of sand at Ingram's three sales and storage yards located at Lake City, Kentucky, Clarksville, Tennessee, and Nashville, Tennessee. Ingram's position is that under Kentucky law the proper standard for determining damages should have been the value of the sand at the place where it was dredged on the Ohio River. Ingram also contends that the admission of evidence of the price of sand at its three yards was error because prejudicial.

The trial court gave the following instruction:

(2) If you do not believe from the evidence that Defendant's dredging and removal of sand from the Plaintiffs' islands was innocent, you will award the Plaintiffs an amount of money equal to the value of the sand removed from the Plaintiffs' islands, that is, you will award the Plaintiffs an amount of money equal to the gross profits the Defendants [*sic*] realized from the sale of sand removed from Plaintiff's [*sic*] islands.

Because Ingram did not object to this instruction, it cannot be assigned as error on appeal. Fed.R.Civ.P. 51. However, the fact is that the instruction properly states the rule adopted in Kentucky. *Lebow v. Cameron, supra,* 394 S.W.2d at 777 (damages based on gross profit); *Swiss Oil Corp. v. Hupp, supra,* 253 Ky. at 569–70, 69 S.W.2d at 1044 (value of mineral taken established by sale price); *Delta Drilling Co. v. Arnett, supra,* 186 F.2d at 486 (damages based on gross receipts). *See generally* Annot., 1 A.L.R.3d 801 (1965) (collecting cases on measure of damages for wrongful removal of sand).

 Ingram's contention that the court erred in permitting the introduction of evidence of the price of sand sold at its three yards is similarly meritless. Evidence was produced that sand taken from the islands was sold at each of the yards. Accordingly, evidence of the sale price of sand at those yards was relevant to the determination of Ingram's gross receipts for the sale of the sand. *See Hughett v. Caldwell County, supra,* 313 Ky. at 92, 230 S.W.2d at 95 (receipts are best evidence of value).

As a final point, Ingram contends that the award is excessive and unconscionable. This is not a case where the verdict is unsupported by evidence and the jury was motivated by passion, prejudice or improper considerations. Accordingly, we decline to disturb the judgment on this ground. *Commonwealth v. Friend,* 500 S.W.2d 405 (Ky. 1973).

### VI. Conclusion

In sum, we find that none of the errors assigned by Ingram on appeal warrant reversal of the judgment of the district court.

The judgment of the district court is affirmed.