767 F.2d 922
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MARTIN L. TREPEL, ET AL., PLAINTIFFS-APPELLANTS,
v.
BERRIEN C. EATON, JR., ET AL., DEFENDANTS-APPELLEES.
 NOS. 83-1826, 84-1335, 84-1344
 United States Court of Appeals, Sixth Circuit.
 6/3/85
 
 E.D.Mich., 101 F.R.D. 539
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: MARTIN and KRUPANSKY, Circuit Judges; and WEICK, Senior Circuit Judge.
 
 PER CURIAM
 
 1
 Plaintiffs Martin L. Trepel, M.D., and Martin Trepel and Associates, Ltd. (collectively referred to as "Trepel") appealed the jury verdict rendered in favor of defendants Berrien C. Eaton, Jr. and Leibsohn, Eaton, Gooding & Romley, P.C. (collectively, "Eaton"), and defendant Gray, Plant, Mooty, Mooty & Bennett ("Gray, Plant") in this legal malpractice action (No. 83-1826). Defendants Gray, Plant (No. 84-1335) and Eaton (No. 84-1344) appealed the denial of attorneys fees, sought pursuant to local court rules, stemming from the same litigation. These appeals, which have been consolidated for the purpose of oral argument, are premised upon the following facts.
 
 
 2
 Martin Trepel is a doctor of osteopathic medicine and Martin Trepel and Associates, Ltd. was a partnership association through which he and others provided radiological services to Pontiac Osteopathic Hospital ("POH"). In the early 1970's, tension developed at the hospital due in part to the appointment of a new administrator whom Trepel, then head of radiology at POH, did not endorse. Subsequent to his appointment the new administrator objected to the renewal of Trepel's contract with the hospital, which over his objections was eventually extended to cover 1975-1979. However, several parties involved in the 1975 negotiations testified at trial that Trepel knew the contract would not be extended beyond 1979, and, in fact, that the 1975 renewal was conditioned on that understanding.
 
 
 3
 Anticipating future difficulties in securing renewals of his contract, Trepel contacted his attorney, defendant Berrien Eaton, Jr. (Berrien), and purportedly instructed him to draft employment contracts for the radiologists employed by Trepel (Drs. Martin Rasp and Bernard Green) (Rasp and Green) in a manner which would afford Trepel more bargaining leverage when his contract was up for renewal. Eaton testified, however, that Trepel never discussed his intent to take the entire department with him should POH refuse to renew his contract. Eaton drafted contracts between Trepel and Rasp and Green to include a restrictive covenant of employment, the enforceability of which was and is dubious under Michigan law.
 
 
 4
 In 1979, the POH Board of Trustees, initially and subsequent to a full administrative review, unanimously voted not to renew Trepel's contract. While Trepel attempted to characterize the reasons for nonrenewal as a personality conflict, much of the testimony at trial disclosed the trustees' dissatisfaction with Trepel's perceived shortcomings as head of the radiology department. In fact, Rasp testified that Trepel did little or none of the routine departmental work and was generally unavailable on Fridays, Saturdays and Sundays. Even when physically present at the hospital, Rasp related, Trepel's performance was 'kind of a standing joke. He spent most of his time on the phone. He would close the door and that would be it.' Green affirmed Rasp's description of Trepel's work habits, and also related that Trepel's failure to appear for an inspection by the American Osteopathic College of Radiology in 1979 resulted in the hospital losing its accreditation for radiology residency.
 
 
 5
 There was substantial evidence in the record that Trepel's declining interest in the radiology department at POH had a direct correlation to his petroleum exploration and development company ('Trepel Petroleum'), as well as his efforts in organizing a new hospital, Huron Valley Hospital (HVH), in an area overlapping the territory served by POH. Toward this latter goal Trepel formed a corporation, West Oakland Hospital Services Corp., through which he acted as a consultant to HVH to raise funds, obtain a Certificate of Need, and perform other services. It is interesting to note that he admitted that if HVH commenced operation, his West Oakland corporation had the right to provide radiological, hospital management, and related services to HVH over a 15 year period. Eaton testified that he advised Trepel to become disassociated with HVH because of the conflict of interest with his position at POH.
 
 
 6
 On December 1, 1979, approximately the same time POH trustees reaffirmed their earlier decision not to renew Trepel's contract, Trepel became a client of defendant Gray, Plant by reason of Eaton's admission as a partner into that firm. In an apparent last ditch effort to force POH to reconsider its refusal to renew Trepel's contract, Gray, Plant drafted and filed a complaint in state court against POH and numerous physicians associated with it. Trepel alleged breach of contract predicated on the alleged failure of POH to provide facilities and to generally meet the standards set forth in the 1975-1979 Trepel-POH agreement, which Trepel charged resulted in a loss of referrals and total billings.[1]
 
 
 7
 Trepel's charges of impropriety against POH and the 12 individual defendants were publicized in the Detroit metropolitan area. In connection with stories of this lawsuit, reporters from The Oakland Press and The Detroit News contacted POH attorney Robert Cutler (Cutler). Although Cutler, at the time, had not received the complaint filed by Trepel, Cutler opined that the suit was in retaliation for POH's refusal to renew Trepel's contract. In March, 1980, Trepel inquired of Gray, Plant as to the merits of an action against Cutler for the defamatory statements he made to the newspapers. According to C. Forslund (Forslund), an attorney for Gray, Plant, Trepel was advised that (1) the remarks were not slanderous; (2) even if they were, damages were questionable; and (3) such a lawsuit would detract from Trepel's existing litigation in terms of time, money, and Trepel's credibility. Forslund further related that '[a]t that time Dr. Trepel accepted this advice and that was the end of it.'
 
 
 8
 Shortly after Trepel had commenced suit against POH, it became apparent that Rasp and Green would continue to provide radiological services at POH. Trepel indicated to Gray, Plant that he wished to initiate legal action against these physicians for breach of the noncompetition covenants contained in their contracts with him. Gray, Plant prepared and filed a complaint for an injunction, but subsequently discovered a Michigan statute had eroded the enforceability of the claims as stated in the complaint. The complaint was amended in an effort to comply with the statute governing noncompetitive clauses. According to defendants, this claim is pending in the Michigan State circuit court, and the enforceability of the covenants has not yet been judicially determined.
 
 
 9
 In January, 1982, Trepel filed the legal malpractice complaint from which this appeal arose in state court, and defendants removed the action to the United States District Court. Trepel charged that his former attorneys improperly represented him in the foregoing matters. Specifically, Trepel charged that (1) Eaton committed malpractice in drafting the noncompetition covenants, the enforceability of which is currently at issue in the lawsuit against Rasp and Green; (2) Gray, Plant, who became Trepel's attorneys on December 1, 1979, and sued Rasp and Green on his behalf in January, 1980, injured him by failing to discover and inform him that the enforecability of the noncompetition provisions at issue in that lawsuit was tenuous under Michigan law; and (3) Gray, Plant, in furtherance of a conspiracy with attorneys for POH, deprived him of the opportunity to collect damages in a defamation action against Cutler who was quoted by two Detroit area newspapers in their coverage of Trepel's suit against the hospital. Defendant Gray, Plant counterclaimed for Trepel's unpaid attorney's fees.
 
 
 10
 In May, 1983, the district court referred the case to a panel of the Mediation Tribunal Association for evaluation of settlement pursuant to Local Rule 32 of the United States District Court for the Eastern District of Michigan. On June 16, 1983, the Mediation Board presented its evaluation of the case for settlement purposes: $35,000 against defendants Eaton and Liebsohn, Eaton, Gooding & Romley, P.C., and $10,000 against defendant Gray, Plant. The Board denied defendant Gray, Plant's counterclaim. All defendants accepted the Board's evaluation. Trepel rejected it.
 
 
 11
 The matter was tried before a jury and a verdict was returned in favor of all defendants together with an award of $22,775.77, the full amount of legal fees claimed by Gray, Plant. The court entered judgment on November 1, 1983, and Trepel filed a timely notice of appeal. Due to their success in district court, defendants also sought attorney's fees, pursuant to local rules of the Eastern Michigan district court which authorize an award of fees against a party who rejects a Mediation Panel settlement and who is subsequently unsuccessful in court. However, the district court denied the attorney fee request as untimely. Defendants filed a timely appeal of that decision. In sum, three issues were presented by this appeal: (1) whether the trial court erroneously allowed prejudicial testimony concerning Trepel's financial status; (2) whether the trial court's refusal to admit as evidence an allegedly libelous newspaper article constituted reversible error; (3) whether the district court erred in determining that defendants' application for attorney's fees was time barred.
 
 
 12
 As to the admission of evidence regarding Trepel's finances, this court finds no error. To the contrary, the evidence was relevant to the issues of proximate cause and damages charged in Trepel's negligence action against defendants. In addition, Trepel's failure to objected to the inquiry at trial constituted a waiver of his right to challenge on appeal the admission of this evidence. Hammonds v. Ingram Industries, Inc., 716 F.2d 365, 372 (6th Cir. 1983).
 
 
 13
 Plaintiff's argument that reversal is warranted by the court's failure to admit a newspaper article published in The Detroit News is also without merit. Even assuming, arguendo, that the article met the criteria for admission under FRE 803(24) and/or FRE 804(b)(5), no prejudice resulted to plaintiff because an article which appeared in the Oakland Press was admitted into evidence which plaintiff himself characterizes as 'substantially the same' as The Detroit News piece.
 
 
 14
 Finally, defendants urged that the district court erred in determining that the 30-day time limit of Rule 17 of the local rules for the Eastern District of Michigan barred defendants' motion for attorneys fees pursuant to Local Rule 32. While this court may have decided the issue differently under a de novo standard of review, this panel finds it more appropriate to defer to the district court's interpretation of its own rules. Therefore, the court's ruling on defendants' motion for attorney's fees will not be disturbed on appeal.
 
 
 15
 In view of the foregoing, the judgments of the lower court in cases No. 83-1826 and Nos. 84- 1335/1344 is hereby AFFIRMED.
 
 
 
 [1]
 Under the terms of the contract, Trepel received all of the revenues from the radiology department and was in turn responsible for its financial obligations